UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL R.

                      **Plaintiff,**                       22-CV-00404-HKS

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**
_____

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #25.

## BACKGROUND[1]

On February 22, 2019, plaintiff, at the age of 46, protectively filed an application for Supplemental Security Income ("SSI") benefits, alleging a disability onset date of October 1, 2018 . Dkt. #4, pp. 183-188.[2]

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

[2] Although plaintiff alleged an onset date in 2018, the earliest month for which SSI benefits are payable is the month following the month in which the claimant filed his or her application. 20 C.F.R. § 416.335. Thus, the relevant period begins on February 22, 2019, the date of plaintiff's application. *Jedermann v. Comm'r of Soc. Sec.*, 1:19-CV-0761 (CJS), 2020 WL 5361665, at *2 (W.D.N.Y. Sept. 8, 2020).

~ 1 ~

In a Disability Report filed on March 18, 2019, plaintiff alleged he was disabled due to chronic obstructive pulmonary disease ("COPD"), neck and back pain, and right clavicle surgery in 2002. Dkt. #4, p. 219.

Plaintiff's claim was denied initially on June 19, 2019, Dkt. #4, pp. 102-107, and on reconsideration on November 1, 2019. Dkt. #4, pp. 111-122.

Plaintiff requested a hearing, and a telephonic hearing was held on November 3, 2020 before Administrative Law Judge ("ALJ") Michael J. Stacchini. Dkt.#4, pp. 37-74. Plaintiff appeared with counsel. *Id.*

Upon examination by the ALJ, plaintiff testified that he lives with a friend and that other friends sometimes take him to the grocery store and the laundromat because he does not have access to a car. Dkt. #4, pp. 50-51. He also takes the bus to Walmart because he cannot walk very far. *Id.*

Plaintiff testified that, as to hobbies, he watches television; he does not exercise; and he does not belong to any social, volunteer, or church organizations. Dkt. #4, p. 52.

Next, plaintiff testified that he prepares light meals such as chicken and soups because he has heartburn. Dkt. #4, p. 53. As for cleaning, he testified that he is able to do "basic stuff," such as wiping down counters, and dusting, but if he is doing the

dishes or vacuuming, he has to stop every couple of minutes because he gets out of breath and his arm hurts. Dkt. #4, pp. 53-54.

Plaintiff also testified that he had clavicle surgery, and he has back pain for which he takes Ibuprofen 800 mg. Dkt. #4, p. 54. The back pain shoots from his neck to the small of his back, and he testified that he also has a slight curvature of his spine. *Id.*

The ALJ asked plaintiff what activities increase the pain, and he testified:

> Walking up steps. I cannot do sports anymore. Vacuuming, even that hurts. Sitting down, I can only sit down for, like, ten minutes. Just sitting down hurts. I got to stand back up, and I've got to stretch out and maybe walk around the table or whatever, and just stretch my back up.

*Id.*

Plaintiff testified that he has COPD and used to be a smoker, and that he has five different inhalers and a nebulizer. Dkt. #4, p. 55. The COPD affects his walking, and he needs to use his inhalers after walking a couple of blocks. Dkt. #4, pp. 55-56. He is no longer able to run or play sports. *Id.*

Next, plaintiff testified that he received mental health counselling while in alcohol rehabilitation, the counselor put him on medications, and his doctor is trying to find him a psychiatrist. Dkt. #4, p. 56. He takes three medications for depression, ADHD, and sleep disorder. *Id.* He also takes a medication that will make him sick if he drinks

alcohol, but he testified that he drinks when watching football, so he does not take that medication on those days. Dkt. #4, pp. 56-57.

Plaintiff testified that he also had septum surgery because his nose was broken a few times, and he takes Flonase everyday for congestion. Dkt. #4, p. 57.

Plaintiff next testified that, as a result of his clavicle surgery, his arm sometimes goes numb if he is writing. Dkt. #4, p. 58. He also took medication to help lower his cholesterol, and he had high blood pressure but it is under control. Dkt. #4, pp. 58-59.

Finally, plaintiff testified that he used to be a carpenter, but he cannot do that work anymore because he cannot use his right arm. Dkt. #4, pp. 59-60.

Upon examination by his attorney, plaintiff testified that, due to his clavicle surgery, it is hard to hold things with his right arm, it sometimes goes numb, and he has pain in his rotator cuff. Dkt. #4, p. 61. He is right-handed, and his arm gets weak and he sometimes drops things. Dkt. #4, pp. 61-62. When his right hand and arm go numb, he has to stop what he is doing for about 15-20 minutes. Dkt. #4, p. 62.

Plaintiff next testified that he was in inpatient treatment for his alcohol use. Dkt. #4, p. 64.

Plaintiff testified that he lives not only with his friend but also his friend's wife, and she does most of the cooking and cleaning. Dkt. #4, p. 65.

Plaintiff's attorney then asked plaintiff about his difficulty sitting, and he testified that he is able to sit for 10-15 minutes and then needs to stand up, stretch, and take Ibuprofen. Dkt. #4, p. 66. He experiences pain when walking more than two blocks, in addition to getting out of breath. *Id.* Plaintiff testified that he is able to stand for about 25 minutes in one spot and then has to sit down. Dkt. #4, p. 67.

Finally, plaintiff testified that very cold weather, as well as humidity, increases his difficulty breathing. *Id.*

The ALJ next heard from Francis Kinley, a Vocational Expert ("VE"). The ALJ asked the VE to assume a hypothetical individual of plaintiff's age, education, and work experience who is able to perform the full range of light work; and who can stand, walk, and sit for up to six hours in an eight-hour workday, with regularly scheduled breaks of ten minutes in the morning and afternoon, and a half-hour at midday. Dkt. #4, p. 68. Further, the ALJ stated that the individual would be limited to occasional climbing of ramps and stairs, and no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling; and up to frequent reaching, handling, and fingering. *Id.* He should also avoid extreme cold, humidity, concentrated exposure to atmospheric conditions, hazardous machinery, and unprotected heights. Dkt. #4, pp. 68-69. Finally, the ALJ stated that the person has no past relevant work. Dkt. #4, p. 69.

The ALJ then asked the VE if such an individual could perform any unskilled jobs in the national economy. *Id.* The VE stated that such a person could perform the light unskilled jobs of cafeteria attendant, cleaner/housekeeper, marker, and cashier. *Id.* The ALJ asked whether the person could still perform those jobs if he was limited to understanding, remembering, and carrying out simple, routine tasks throughout the eight-hour workday, and the VE stated that he could. Dkt. #4, p. 70.

Finally, the VE testified that all unskilled work would be precluded if the individual was off task for 15% of the workday, in addition to regularly scheduled breaks. *Id.*

Plaintiff's counsel asked the VE what the impact on these jobs would be if the person was unable to walk more than a few blocks without getting out of breath and could not stand for more than twenty minutes at a time. *Id.* The VE testified those limitations would not preclude the cashier job, and they would not preclude the other jobs—which vary in the amount of walking required—because of the high number of such jobs available in the national economy. Dkt. #4, pp. 71-72. Rather, the number of available jobs might be reduced due to such limitations. *Id.*

Next, plaintiff's counsel asked what the effect on the jobs would be if plaintiff could only use his right arm/hand for ten minutes and then it became numb and he needed to rest it for twenty to thirty minutes. Dkt. #4, p. 72. The VE testified that that would amount

to only "occasional" reaching, handling, or fingering, which would make him unable to perform the jobs. Dkt. #4, p. 73.

On February 19, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #4, pp. 18-36. The Appeals Council denied plaintiff's request for review on March 23, 2022, Dkt. #4, pp. 6-11, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since February 22, 2019, the application date; (2) plaintiff has the severe impairments of COPD, obstructive sleep apnea, and degenerative disease of the cervical and lumbar spine; (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff

has the RFC to perform light work[3] except he can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach, handle, and finger; and he must avoid extreme cold, humidity, concentrated exposure to atmospheric conditions, unprotected heights, and hazardous machinery; (5) plaintiff has no past relevant work; (6) considering plaintiff's age, education, work experience, and RFC, he is able to perform the occupations of cafeteria attendant, cleaner housekeeping/marker, and cashier; and (7) plaintiff has not, therefore, been under a disability within the meaning of the SSA since February 22, 2019. Dkt. #4, pp. 23-31.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

**Challenges to the ALJ's Decision**

Plaintiff makes two challenges to the ALJ's decision: (1) the ALJ failed to include a sit-stand option in the RFC; and (2) the ALJ improperly substituted his own lay judgment for medical opinions.

*Sit-Stand Option*

Plaintiff argues that the RFC is not supported by substantial evidence because, in not including a sit-stand option, the ALJ failed to properly consider the opinion of consultative examiner Dr. Hongbiao Liu ("Dr. Liu") and plaintiff's testimony. The Court disagrees.

First, plaintiff's argument rests on the false premise that Dr. Liu opined that plaintiff needed to change positions every twenty minutes while sitting or standing. Dkt. #13-1, p. 16. In fact, Dr. Liu rendered no such opinion.

Instead, in his report of his June 10, 2019 physical examination of plaintiff, Dr. Liu noted merely that *plaintiff complained* that he needed "to change positions every 20 minutes while sitting or standing." Dkt. #4, p. 375. However, Dr. Liu noted that plaintiff had full flexion, extension, lateral flexion bilaterally, and rotary movement bilaterally in his cervical spine; some limitation in his lumbar spine movements; full range of movement in his hips, knees, and ankles bilaterally; no evident subluxations, contractures, ankylosis, or thickening; and his joints were stable and nontender. Dkt. #4, p. 377.

Dr. Liu also noted, as recounted by the ALJ, that plaintiff had a normal gait and stance; he could squat 80%; he could rise from a chair without difficulty; and he needed no help changing for the exam or getting on or off the examining table. Dkt. #4, pp. 28, 376.

In his report, Dr. Liu opined that plaintiff had "mild to moderate" limitations for prolonged walking, sitting, and standing. Dkt. #4, p. 378. He did not opine that plaintiff required a sit-stand option. *Id.*

The ALJ also found plaintiff's testimony regarding disabling symptoms and limitations to be inconsistent with his activities of daily living and the medical records which showed only conservative treatment for his COPD and consistent improvement in that condition, as well as imaging which showed that plaintiff's spinal discs were "relatively well maintained." Dkt. #4, p. 29.

On such evidence, courts within the Second Circuit routinely conclude that even moderate, as well as mild to moderate, limitations in walking, sitting, or standing are consistent with light work. *See Aida M. v. Comm'r of Soc. Sec.*, Case No. 1:22-cv-00869-TPK, 2025 WL 854334, at *5 (W.D.N.Y. Mar. 19, 2025) (concluding that RFC was based on substantial evidence where ALJ found persuasive Dr. Liu's opinion that plaintiff was "moderately" limited in, *inter alia*, sitting and standing but still concluded plaintiff was capable of light work); *Daniel James V. v. Comm'r of Soc. Sec.*, 1:20-CV-01826-MJR, 2023 WL 128521, at *4 (W.D.N.Y. Jan. 9, 2023) (finding that Dr. Liu's opinion that plaintiff

had a mild to moderate limitation in prolonged walking was not inconsistent with RFC for light work).

Moreover, where there is no medical opinion or medical evidence supporting the need for a sit-stand option, the ALJ is entitled to reject plaintiff's testimony regarding his or her functional limitations. *See Cheryl L. E. v. Comm'r of Soc. Sec.*, 1:22-cv-00308 (JJM), 2024 WL 4182567, at *5-8 (W.D.N.Y. Sept. 13, 2024); *Roane v. O'Malley*, 22 Civ. 10704 (AEK), 2024 WL 1357845, at *9 (S.D.N.Y. Mar. 29, 2024) ("The burden is on the Plaintiff to point to medical evidence in the record to support the need for a sit/stand option, and she has not satisfied this burden.") (citations omitted); *Daniel James V.*, 2023 WL 128521, at *4 (rejecting challenge based on ALJ's failure to include sit-stand option; Dr. Liu did not opine that plaintiff required such an option despite opining that he had mild to moderate limitation in prolonged walking).[4]

Further, it is well established that an ALJ "is free to partially credit, or otherwise make reasonable inferences from, the evidence to determine a claimant's functional capacities and limitations." *Robert v. Comm'r of Soc. Sec.*, Case # 23-CV-1247-FPG, 2025 WL 934538, at *4 (W.D.N.Y. Mar. 27, 2025) (citations and internal quotation marks omitted). That plaintiff disagrees with the ALJ's inferences is insufficient to demonstrate that the RFC is not supported by substantial evidence. *Laura K. v. Comm'r*

---

[4] On this point, plaintiff's reliance on *Phoebe B. v. Comm'r of Soc. Sec.*, 1:20-CV-01570 CJS, 2022 WL 4462228 (W.D.N.Y. Sept. 26, 2022), is unavailing. There, a consultative examiner opined that the plaintiff could only stand or walk for four hours in a workday, thereby implicating a sit-stand option. *Id.* at *8. There is no such opinion evidence in this matter.

*of Soc. Sec.*, 23-CV-641 (JLS), 2025 WL 339006, at *6 (W.D.N.Y. Jan. 30, 2025) (citation omitted).

For these reasons, the Court finds plaintiff's argument about a sit-stand option to be without merit.

### *Medical Opinions*

Plaintiff next argues that, in crafting plaintiff's RFC, the ALJ improperly substituted his own lay judgment, "effectively discounting all medical opinions regarding" plaintiff's physical limitations. Dkt. #13-1, p. 21. This argument is contrary to the record.

"In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Barry J. v. Comm'r of Soc. Sec.*, 725 F. Supp.3d 312, 323 (W.D.N.Y. 2024) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). "While an ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in [his] decision, . . . an ALJ is not a medical professional, and therefore [he] is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Id.* (citation and internal quotation marks omitted).

Contrary to plaintiff's argument, the ALJ here properly analyzed the medical opinion evidence, explaining what weight he afforded it and why.

~ 14 ~

After reviewing plaintiff's testimony and medical records, the ALJ discussed Dr. Liu's report. As noted above, the ALJ recounted Dr. Liu's medical findings from his physical examination of plaintiff and his opinion regarding plaintiff's functional capacities. Dkt. #4, p. 28. The ALJ explained that he found Dr. Liu's opinion "generally persuasive" because it was supported by his examination and was generally consistent with plaintiff's medical records and his testimony regarding his daily activities. Dkt. #4, pp. 28-29.

The ALJ then considered the opinions of the state agency consultants, Drs. Koening and Baranos. Dkt. #4, p. 29. While Dr. Koening opined that plaintiff could perform medium exertion work, the ALJ concluded that, while that opinion was supported by citations to the medical record, it was insufficiently restrictive given plaintiff's subjective complaints. *Id.* Similarly, the ALJ found that Dr. Baranos's opinion on reconsideration that plaintiff's physical impairments were non-severe was, for the same reason, of little persuasive value. *Id.*

It is thus clear that the ALJ considered these three medical opinions in fashioning the RFC and did not simply rely on his own lay judgment. Moreover, in doing so, he imposed greater restrictions than those recommended by two of the three doctors.

"The Second Circuit and this Court have repeatedly affirmed decisions where the ALJ incorporated additional RFC restrictions beyond what a medical source identified." *Waledahmad A. v. Comm'r of Soc. Sec.*, # 1:22-cv-398-DB, 2024 WL 3722697, at *9 (W.D.N.Y. Aug. 8, 2024) (citations omitted). *See also Otis L v. Comm'r of Soc. Sec.*,

1:24-cv-04347-GRJ, 2025 WL 219355, at *4 (S.D.N.Y. Jan. 15, 2025) ("The Court finds no error in the ALJ's conclusion that Plaintiff was somewhat more limited than the medical opinion evidence suggested, but not so limited as to be considered disabled within the meaning of the Social Security Act.") (citations omitted); *Roane*, 2024 WL 1357845, at *9 ("Moreover, Plaintiff also suffered no harm due to ALJ Romeo's deviations from Dr. Abueg and Dr. Miller's opinions—indeed, those departures led the ALJ to assess more restrictive limitations than what Dr. Abueg and Dr. Miller deemed appropriate.").

In sum, it "is the ALJ's duty to formulate the RFC after evaluating the opinion evidence, treatment records, and the testimony of the claimant." *Palistrant v. Comm'r of Soc. Sec.*, Case # 16-CV-588-FPG, 2018 WL 4681622, at *5 (W.D.N.Y. Sept. 28, 2018) (citation and internal quotation marks omitted). As the above discussion demonstrates, this is what the ALJ did here.

The ALJ's decision is thus supported by substantial evidence and must be affirmed.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #13) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #17) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED: Buffalo, New York

December 30, 2025

    <u>s/ H. Kenneth Schroeder, Jr.</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**